(Judge Follett of the Fifth Circuit, taking the place of Judge Frazier.)

### THE ELDER v. THE B., Z. & C. Ry. Co.

DONATING MONEY TO A RAILROAD UNDER CERTAIN CONDITIONS.

Where a donation was made of a sum of money to a railway company, payable "at any time within two years" that said line may be constructed and operated between given points, "provided the depot at C. is permanently located not farther east than the centre of C." *Held*, that the proviso in relation to the location of the depot is a condition precedent to the right to collect the amount of the donation.

ERROR to the Court of Common Pleas of Guernsey county.

The case is stated in the opinion.

Steele & Rosemond, for plaintiff in error:

The note sued on was an offer by Elder to do a certain thing, was a *unilateral* promise; and did not become, and has not become a contract, because the company has not accepted it. Pollock on Contracts, 160, note *b;* 180, note *f;* 1 Addison on Contracts, 32, section 17; Chitty on Contracts, 9, 15; 1 Parsons on Contracts, 374-5.

Performance, if it had been made in compliance with the terms of the offer, would have been an *acceptance*. Authorities *supra*.

The performance alleged in the petition is not such performance, and therefore did not constitute an acceptance.

This question was raised in R. R. Co. v. Brown, 26 O. S., 223, and in Same v. Stout, *ib.*, 241, and in Warner v. Callender, 20 O. S., 190, but was not passed on because in those cases there was no pretense that the performance was not made. Those cases, too, were cases of *subscriptions to the stock*, not *donations*.

The principles in the Chamberlain case, 15 O. S., 225, settle this case in favor of Elder, although applied to a different state of facts in that case. The facts in that case differ materially from this:

1. Elder is not a subscriber to the stock, and the reasons given why Chamberlain should pay what he didn't want to are not reasons why Elder should pay what he didn't *agree* to. 2. A principal reason given why Chamberlain should be held was that to construe his subscription literally, a depot was to be *built* before the track was laid, while in this case the road is to be "constructed" and "cars run" before the depot is "permanently located." 3. Elder offers

to *give* upon condition. 4. Elder has done nothing to give this contract a different construction by his conduct. 5. In the Chamberlain case it was apparent on the face of the contract that the subscription was to be used in constructing the road. It was to be paid in installments as the directors might require. In this case the road is first built, and that fact is pleaded as a performance.

Elder had the right to hamper his offer to give with such conditions as he saw fit.

In construing a paper partly printed and partly written, especial attention should be given the part in writing, because the attention of the maker, it will be presumed, was particularly drawn to that part.

W. F. Hunter, for defendant in error:

Cited, 2 Parsons on Contracts, 527 and 527, note, *r;* Pierce on Railroads, 62-3; Chamberlain v. R. R. Co., 15 O. S., 225, 243; Warner v. Callender, 20 O. S., 190, 197; M. C. & L. M. R. R. v. Stout, 26 O. S., 241, 254; Kane v. Stone Co., 39 O. S., 1, 10, 11.

FOLLETT, J.

The petition by the company allege, that James A. Elder executed and delivered to it his written obligation in the following words and figures:

"$25.00                                        CUMBERLAND, OHIO, Nov. 25, 1882.

"For and in consideration of the undertaking by the Bellaire, Zanesville and Cincinnati Railway Company, to construct a railway under their certificate of incorporation, and of the pecuniary advantages and benefits thereby accruing to me, I promise to donate, and hereby agree to pay to the Bellaire, Zanesville & Cincinnati Railway Company, or order, twenty-five dollars, and pay the same at any time within two years that said line of railway may be constructed from the Burnt Mills to Cumberland, so that the cars can pass over the same: Provided, the depot or station-house for Cumberland is permanently located not further east than the centre of said town.                                        JAMES A. ELDER."

It appears from the exhibit attached to the petition, that all that part subsequent to the words "pay the same" is written, while that preceding is an ordinary printed blank, with blanks filled in with pen.

The petition further alleges, that said company did construct its road from Burnt Mills to Cumberland; that the cars could and did pass over the same, and said railway is in operation between said points; that after so complying with said contract, said company, which still owns and holds said contract, demanded payment. That in complying with said contract plaintiff expended large sums of money, and did great labor, to the knowledge, at the time, of Elder, and upon the faith of his promise.

To this petition Elder demurs. That raises the question as to the sufficiency of the alleged performance, and the further question whether the proviso contained in the obligation of Elder is a condition precedent or subsequent, or stipulation merely, for the failure to comply with which, by the company, Elder might recover.

In the light of the principles laid down in the Ohio cases, and especially the case of Chamberlain v. The R. R. Co., 15 O. S., 225, we are of opinion that the petition is insufficient. Elder is not a subscriber to the stock, nor does the language of his donation indicate an obligation *in praesenti*. He promises to make a donation at any time after certain things are done. It was not in contemplation of the parties that Elder's donation was to be used in constructing the road. We think it clear that Elder's agreement is to give the company $25.00, upon the condition that it shall first construct its road and permanently locate its depot at a certain point. Both provisions are *written* in at the bottom of the blank. It seems manifest that they did not intend one to be a condition precedent and the other a condition subsequent.

In Chamberlain's case the road was to be permanently located, and a freight house, by a separate clause, was to be erected. White, J., says, p. 244: "If

the party intended that the building of both should concur before his rights and liability as a stockholder should attach, it seems to us he would have applied the same or similiar language to both." In this case he does:"at any time * * * that said line * * * be constructed; provided the depot * * * is permanently located," etc.

Of these conditions there is no objection to a subscriber inserting as many as he may chose, says White, J., *supra*, and until they are performed, the relation of the subscriber to the company as a stockholder does not arise. Much less would the obligation of a stranger become fixed.

The petition is insufficient without an allegation that the depot has been permanently located as provided in the promise. The demurrer should be sustained.

Judgment reversed.